**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jennifer Niedt, | ) | No. CV 23-00537-TUC-JGZ (MAA) |
| Plaintiff, | ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) | |
| Commissioner of Social Security Administration, | ) ) | |
| Defendant. | ) ) ) | |
| | ) | |

The plaintiff, Jennifer Niedt, filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g).  Doc. 1, p. 1.

The case has been referred to the United States Magistrate Judge for report and recommendation pursuant to the Rules of Practice of this court.  Doc. 10.

The Magistrate Judge recommends that the District Court, after its independent review, affirm the final decision of the Commissioner.  The ALJ properly evaluated the medical opinion of Niedt's primary care provider Nurse Practitioner Stephanie Jones.  The ALJ supported her decision to discount Niedt's subjective symptom testimony with clear and convincing evidence.  Substantial evidence supports the ALJ's finding that there are jobs in sufficient number in the national economy that Niedt can perform in spite of her functional limitations.

PROCEDURAL HISTORY

Niedt filed an application for disability insurance benefits on September 3, 2019.  Administrative Record, AR 18.  She alleged disability beginning on June 5, 2019 due to

depression, anxiety, recent lobectomy (lung), hypothyroidism, hernia, and pleurisy lung. AR 453.

Niedt's application was denied initially and upon reconsideration. AR 18. She requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Laura Havens on June 15, 2022, and again on February 9, 2023. AR 18, 130, 142.

The ALJ issued a decision denying benefits on March 7, 2023. AR 35. The Appeals Council denied Niedt's request for review on September 25, 2023, making the decision of the ALJ the final decision of the Commissioner. AR 1. Niedt subsequently filed this action appealing that final decision. Doc. 1.

Hearing Testimony

Niedt testified that she worked as an assistant manager at a property for low-income seniors from 2008 through 2013. AR 148. It was mainly an office job, but she spent two to three hours per day walking or standing. *Id.* In 2015, Niedt worked for five or six months at a call center for the United Community Health Center. AR 148. She was a receptionist with TDW for about six months. AR 148-149. Then, she worked for Charter Blooms as a delivery driver and shop manager. AR 149.

Niedt had a lower left lung lobectomy in June 2019. AR 146. She worked as a medical receptionist from December 2019 to April 2020, but she was let go because she missed too much work due to illness. AR 146-147.

Niedt lives with her husband and two children. AR 149. She explained that she can do chores around the house, cook, wash dishes, mop or sweep, wash clothes, and shop for groceries. AR 150. She can walk for 15-20 minutes. AR 151. She can drive for two hours. AR 151. She can sit for about 40 minutes. AR 151. She can lift about 10 pounds. AR 151.

Niedt sees her doctors at least once a week. AR 152. She testified that she has pain all the time from her lung surgery. AR 153. Two days per week she is unable to leave the house due to emotional problems. AR 159. She has ruminating thoughts, uncontrolled worrying, fear,

and nervousness.  AR 159.  She has numbness and tingling in her hands.  AR 159.  She can use a keyboard for 10 to 15 minutes before she starts losing feeling in her fingers.  AR 160.

A vocational expert testified that a hypothetical person of the claimant's age, education, and work experience who "can sit six hours out of an eight-hour day, can stand and walk a total of two hours out of an eight-hour day, can occasionally lift and carry [up to] ten pounds, frequently lift and carry less than ten pounds, can occasionally climb stairs, never climb ladders, occasionally stoop, kneel, crouch, and crawl, could have only occasional exposure to heights, moving machinery, dust, fumes, and smoke [and] is able to understand and remember and carry out simple job instructions only" could not do any of Niedt's past relevant work.  AR 162-163.  Such a person could, however, work in an unskilled, sedentary job such as document preparer, DOT (Dictionary of Occupational Titles) #249.587-018, with 15,630 full-time jobs in the national economy; escort vehicle driver, DOT #919.663-022, with 37,450 full-time jobs; or addressor, DOT #209.587-010, with 2,060 full-time jobs.  AR 163.  The vocational expert testified that his testimony was consistent with the DOT and SkillTRAN's Job Browser Pro.  AR 163-164.

At the supplemental hearing, Niedt testified that she has a medical appointment at least once a week.  AR 140.  The vocational expert  testified that medical appointments "once a week" would be "intolerable to a typical, average employer."  AR 141.

CLAIM EVALUATION

To qualify for disability benefits, the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A).  "An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her] or whether [she] would be hired if [she] applied for work." 42 U.S.C. § 423(d)(2)(A).

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). If so, then the claimant is not disabled and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a "severe" impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4). In making a determination at step two, the ALJ uses medical evidence to evaluate whether the claimant has an impairment that significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id*. If the ALJ concludes there is no severe impairment, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past relevant work. 20 C.F.R. § 404.1520(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545.

other substantial gainful work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(a)(4).

"There are two ways for the [ALJ] to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 [the Grids]." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

The ALJ's Findings

At step one of the disability analysis, the ALJ found that Niedt "has not engaged in substantial gainful activity since June 5, 2019, the alleged onset date . . . ." AR 20.  At step two, she found Niedt "has the following severe impairments:  Lung Cancer; Obesity; Hernias; Sleep Apnea; Degenerative Joint Disease, Right Upper Extremity; Depressive Disorder; [and] Anxiety Disorder . . . ." AR 20 (punctuation modified).

At step three, the ALJ found that Niedt "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in  20 CFR, Part 404, Subpart P, Appendix 1 . . . ." AR  23.

The ALJ then analyzed Niedt's residual functional capacity (RFC).  She found that Niedt had the residual functional capacity to perform sedentary work "except claimant can stand and/or walk a total of 2 hours;  never climb ladders, occasionally climb stairs, occasionally stoop, kneel, crouch and crawl, may have occasional exposure to heights, moving machinery, dust, fumes, smoke.[2]   Claimant can understand, remember, and carry[] out simple job instructions only." AR 25.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567 (a).

At step four, the ALJ found that Niedt "is unable to perform any past relevant work . . . ." AR. 33. At step five, the ALJ found, relying on testimony from the vocational expert, that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" considering her "age, education, work experience, and residual functional capacity," such as document preparer, escort vehicle driver, or addressor. AR 34-35. Accordingly, the ALJ found that Niedt is not disabled. AR 35.

STANDARD OF REVIEW

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. § 405(g). The court will "set aside a denial of Social Security benefits only when the ALJ['s] decision is based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (punctuation modified). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Revels*, 874 F.3d at 654. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* But the court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* The court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [she] did not rely." *Id.*

The ALJ need not accept the claimant's subjective symptom testimony, but if she decides to reject it, she must justify her decision. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017). Where "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce pain or other symptoms alleged" and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*

Discussion

Niedt argues first that the ALJ rejected the opinion of her primary care provider, Nurse Practitioner (NP) Stephanie Jones, "without providing an explanation supported by substantial evidence." Doc. 20, p. 4.

Under the new regulations, "[t]he agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source, 20 C.F.R. § 404.1520c(b), and explain how it considered the supportability and consistency factors in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (punctuation modified). "The more relevant the objective medical evidence and supporting explanations presented and the more consistent with evidence from other sources, the more persuasive a medical opinion or prior finding." *Machelle H. v. Kijakazi*, No. 1:20-CV-00357-CWD, 2021 WL 4342313, at *7 (D. Idaho Sept. 22, 2021) (punctuation modified). "In sum, the [ALJ] must explain [her] reasoning and specifically address how [she] considered the supportability and consistency of the opinion, and [her] reasoning must be free from legal error and supported by substantial evidence." *Id.*

The ALJ's analysis of Jones's opinion reads in pertinent part as follows:

Stephanie Jones, ANP [Advanced Nurse Practitioner], opined on December 29, 2021 that claimant could not perform fulltime work at any exertional level. She could stand for no more than 20 minutes at one time, sit for 30 minutes at one time, and could walk for 20 minutes at one time, but no more than 30 minutes. She opined claimant would need to change positions frequently, could not climb ladders, but could climb one flight of stairs per day. She could drive and/or ride in a car for up to 45 minutes at one time for a total of 2 hours. She would be expected to miss 10 to 20 days per month as a result of disability. She opined claimant could occasionally bend, sit, reach above shoulder height, work with arms extended in front, never crouch, kneel or squat, could occasionally power grip, push and pull bilaterally, and feel, never pinch thumb and index finger, or perform fine movements. Claimant should avoid working in extreme temperatures, sudden temperature or humidity change, around pulmonary irritants, unprotected heights and moving machinery. Finally Ms. Jones opined that claimant could work for a total of two hours per day, one to two days per week. (Ex. 21F) [AR 1586-1587] *The undersigned is not persuaded by this opinion*, as it is unsupported to the degree opined by the treating records of this provider. Exams by this provider were largely within normal range. Her firsthand knowledge of claimant's limitations would be limited and her assessment appears largely based upon claimant's self report as opposed to personal observation. (Ex. 35F pg. 103-119) [AR 2489-2505] Further, the manipulative limitations and absentee limitations are inconsistent with the longitudinal medical evidence. Exams at orthopedics and rheumatology note no impairment with regard[] to handling, fingering or feeling and only mild limitations in right shoulder range of motion that improved with treatment. (Ex. 24F pg. 224; 35F pg. 25, 96) [AR

1859; AR 2411, 2482] Claimant appeared to attend nearly all of her scheduled appointments. The frequency of treatment does not indicate that claimant would be absent from work to the degree opined.

AR 32 (emphasis added).

The ALJ discounted Jones's opinion of Niedt's functional limitations because it was not supported by Jones's treatment record. AR 32. The ALJ noted that "[e]xams by this provider were largely within normal range." AR 32. Also, Jones's "firsthand knowledge of claimant's limitations would be limited," and her assessment appeared largely based on Niedt's subjective "self report as opposed to personal observations." AR 32. The ALJ specifically discounted Jones's manipulative limitations and absentee limitations as "inconsistent with the longitudinal medical evidence." *Id.* For example, she observed that "[e]xams at orthopedics and rheumatology note no impairment with regard to handling fingering or feeling and only mild limitations in right shoulder range of motion that improved with treatment." *Id*. The ALJ further noted that Niedt "appeared to attend nearly all of her scheduled appointments." *Id.* And, therefore, she discounted Jones's opinion that Niedt would be absent from work "10 to 20 days per month as a result of disability." *Id.*

The court finds that the ALJ's evaluation of Jones's medical opinion is free from legal error and supported by substantial evidence. The ALJ properly considered whether Jones's medical opinion was supported by her own objective medical observations. *See* 20 C.F.R. § 404.1520c(c)(1)  ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions or prior administrative medical finding(s) will be."). The ALJ noted that Niedt's exams were "largely within normal range." AR 32. The ALJ also properly considered whether Jones's opinion was supported by the observations of other providers. 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." The ALJ noted that "[e]xams at orthopedics and rheumatology" failed to support the level of limitation that Jones reported in her opinion. AR 32. Also, the ALJ found that Niedt's record of attending "nearly all of her scheduled

appointments" was inconsistent with Jones's opinion about the number of days that Niedt would be absent from work. AR 32.

Niedt argues to the contrary that the ALJ's analysis of Jones's medical opinion is faulty. First, she objects to the ALJ's statement that she discounted Jones's opinion because her "firsthand knowledge of claimant's limitations  would be limited." Doc. 20, pp. 6-7. Niedt observes that elsewhere in the decision, the ALJ found "persuasive" the medical opinion of the non-examining state agency consultant at the reconsideration level. Doc. 20, pp. 6-7; *see* AR 31 (citing Ex. 5A) ("The undersigned is persuaded by this opinion, as it is supported by the cited evidence and consistent with the longitudinal evidence . . . ."). This consultant, however, did not have any firsthand observations of the claimant at all. Niedt argues therefore that the ALJ's criticism of Jones's opinion, which is that *Jones's* "first hand knowledge of claimant's limitations would be limited," is inconsistent with her favorable evaluation of the consultant's opinion. Doc. 20, p. 6. The court, however, finds no inconsistency.

The ALJ did not say that the degree of "firsthand knowledge" was a *dispositive* measure of reliability. She simply stated that it was one reason why she did not find Jones's opinion persuasive. Doc. 20, p. 6. It is not inconsistent to discount one medical opinion because that provider had limited firsthand knowledge of the claimant's limitations, while at the same time approving a different medical opinion, whose author had even more limited contact with the claimant, provided that there are other factors in play. The opinion of the second medical provider could be supported by other evidence for example.

Niedt further objects to the ALJ's statement that the medical examiner's opinion was persuasive because it was "consistent with the longitudinal evidence." She asserts that the consultant based his opinion "on less than 20% of all of the longitudinal evidence that was in front of the ALJ. . . . [and] never saw about 80% of the evidence because it was not available to him." Doc. 20, p. 7. Niedt further asserts that Jones's manipulative restrictions were consistent with her own subjective reports of numbness and tingling. Doc. 20, pp. 7-8. In her reply brief, Niedt argues that Jones's opinion is well supported by the medical record. Doc. 26, pp. 2-4.

Niedt seems to be arguing that a fair reading of the evidence would show that Jones's opinion is more worthy of credence than the opinion of the non-examining consultant. Her argument, however, overlooks the standard of review. The court does not reweigh the evidence. It only determines whether the ALJ's decision is free from legal error and supported by substantial evidence. The court finds that it is.

In her second allegation of error, Niedt argues that the ALJ failed to properly analyze the opinion of the treating psychiatrist, Brianna Williamson, M.D. Doc. 20, p. 9. The ALJ's decision reads in pertinent part as follows:

> Dr. Brianna Williamson opined on January 4, 2022 that beginning May 24, 2019, claimant has multiple medical comorbidities that worsen psychiatric symptoms. She opined that claimant had a moderate limitation in the ability to complete a work week without interruptions from psychologically based symptoms and to perform at a consistent pace without more than the normal rest periods, but no limitations in any other functional domain. (Ex. 27F) [AR 2226] *The undersigned is not fully persuaded by this opinion*, as it is unsupported to the degree opined by the treating notes of this provider. There were no observed psychologically based symptoms noted on exams, only self report by claimant. The undersigned does find some persistence limitations are consistent with the longitudinal evidence, including claimant's consistent self report of fatigue and depressive amotivation. (Ex. 4F; 34F) [AR 795-800; AR 2379-2386]

AR 27 (emphasis added).

The ALJ was not "fully persuaded" by Williamson's opinion because it was "unsupported to the degree opined by the treating notes of this provider." AR 27. This is an acceptable reason for discounting the opinion of a medical provider. *See* 20 C.F.R. § 404.1520c(c)(1).

The ALJ further observed that "[t]here were no observed psychologically based symptoms noted on exams, only self report by claimant." AR 27. This statement, however, is problematic. As Niedt explained, "[o]n the majority of her visits, Ms. Niedt was observed as tearful, labile and/or with a constricted affect." Doc. 20, p. 9 (citing AR. 1286, 1436, 1638, 1731, 1805, 1840). Presumably, a tearful affect is an observable psychological symptom that does not rely on "self report" by the claimant.

It is not entirely clear how the ALJ's two statements relate to each other. If they are separate statements, then the court could conclude that the first statement supplies the requisite

substantial evidence. If, however, the second statement clarifies the first, and the second statement is untrue, then the court could conclude that the ALJ's analysis of Williamson's opinion is not supported by substantial evidence. In her reply brief, Niedt further asserts that Williamson's opinion is well supported by the longitudinal record. Doc. 26, p. 5.

The court need not decide this issue, however, because even if the ALJ's analysis of Williamson's opinion was faulty and she should have given the opinion more credence, the error is harmless. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9ᵗʰ Cir. 2015) (An error is harmless if "it is inconsequential to the ultimate nondisability determination. . . .").

When evaluating Niedt's residual functional capacity (RFC), the ALJ concluded that Niedt "can understand, remember, and carry[] out simple job instructions only." AR 25. This limitation is sufficient to incorporate Williamson's opinion that the claimant has "a moderate limitation in the ability to complete a work week without interruptions from psychologically based symptoms and to perform at a consistent pace without more than the normal rest periods." *See, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9ᵗʰ Cir. 2008) (An RFC limiting the claimant to "simple, routine, repetitive sedentary work, requiring no interaction with the public" adequately captures a medical opinion that the claimant is "moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods."); *Rodriquez v. Colvin*, 2015 WL 1237302, at *6 (E.D. Cal. Mar. 17, 2015) ("[A] moderate limitation in the ability to complete a workday or workweek without interruption is consistent with and properly captured by a limitation to simple repetitive tasks."). Even if the ALJ's analysis of Williamson's medical opinion was error, that error would not have affected the RFC analysis or the ALJ's ultimate disability determination.

In her third allegation of error, Niedt argues that the ALJ failed to provide clear and convincing reasons for discounting her subjective symptom testimony. Doc. 20, p. 10.

Niedt explains that "it is not sufficient for ALJs to make a single, conclusory statement that the individual's statements about his or her symptoms have been considered or that the statements about the individual's symptoms are (or are not) supported or consistent." Doc. 20, p. 11 (citing SSR 16-3p). Instead, "[t]he determination or decision must contain specific

reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Doc. 20, p. 11.

Niedt argues that the ALJ failed to provide these specific reasons and instead supplied the following boilerplate:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in this decision*.

Doc. 20, p. 11 (emphasis in original); AR 25. Niedt asserts that in this case "there are no reasons explained in the decision" and the ALJ's decision must be reversed. Doc. 20, p. 11. The court does not agree. While it is true that the ALJ's "reasons" do not appear in this particular paragraph, they do appear elsewhere in the decision.

Immediately after this paragraph, the ALJ explained that "the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms" are "inconsistent because they are not fully supported to the degree alleged." AR 26. She then discussed in detail Niedt's psychological and physical impairments and the medical record relating to those impairments.

The next five paragraphs are devoted to a review of Niedt's psychological impairments and the history of her symptoms and treatment. AR 26-27. The ALJ explained that she "finds that the degree of the claimant's subjective complaints [of depressive amotivation and anxiety] is not comparable to the frequency or extent of treatment sought by the claimant." AR 26. The ALJ then devoted four paragraphs to discussing the medical opinion evidence as it related to Niedt's psychological impairments. AR 27.

The next eleven paragraphs are devoted to Niedt's physical impairments and the history of her symptoms and treatment. AR 28-31. For each impairment, the ALJ explained which functional limitations she believed were supported by the medical record. *Id.* The ALJ then devoted the next five paragraphs to a discussion of the medical opinions directed toward Niedt's physical limitations. AR 31-32.

In conclusion, the ALJ explained that

> the above residual functional capacity assessment in this finding is based on all of the relevant evidence in the case record. The relevant medical evidence and other evidence in the case record only partially support the claimant's statements regarding the alleged intensity, persistence, and limiting effects of symptoms.

AR 33.  The court concludes that the ALJ provided clear and convincing reasons for discounting Niedt's subjective symptom testimony.  *See also, Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (A reviewing court considers the agency's decision as a whole, "[l]ooking to *all* the pages of the ALJ's decision," when determining whether substantial evidence supports that decision.)  (emphasis in original).

In her fourth allegation of error, Niedt argues that the ALJ failed, at step five of the disability analysis, to show that there are jobs that Niedt can perform that exist in significant numbers in the national economy.  Doc. 20, pp. 12-13.

At step five of the disability analysis, the ALJ found, relying on the testimony of the vocational expert, that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" considering her "age, education, work experience, and residual functional capacity," such as document preparer, escort vehicle driver, or addressor.  AR 34-35.

Niedt argues that she cannot perform the job of "document preparer" because, according to the Dictionary of Occupational Titles (DOT), that job requires "level 3 reasoning" and the ALJ's RFC states that she can "understand, remember, and carry[] out simple job instructions only."  Doc. 20, p. 14;  AR 25.  The Commissioner does not dispute this argument.  Assuming the ALJ erred here, the error was harmless because the other two jobs, escort vehicle driver and addressor, are sufficient to satisfy the step 5 analysis.

Niedt further argues that she cannot perform the job of "escort vehicle driver" because her RFC limits her to sedentary work and this job *should* be classified as light work. Doc. 20, pp. 14-15.  Niedt concedes that the Dictionary of Occupational Titles (DOT) characterizes this job as sedentary, but she believes that a "light" classification would be more accurate.

The DOT explains that an "escort vehicle driver" drives a vehicle equipped with warning lights "to escort trucks hauling mobile homes on public thoroughfares. . . ."  Doc. 20, p. 15.  The

driver "[c]ommunicates by two-way radio with truck and other pilot vehicle drivers to coordinate changes in speed and route, emergencies, or traffic congestion." *Id*. Niedt argues that this driving and radio work involves "constant use of the hands and feet as described in the light definition of work." Doc. pp. 15-16. The court is not convinced.

The regulations define light work, in part, as a job that requires "sitting most of the time while pushing or pulling arm or leg controls" or "working at a production rate pace while constantly pushing or pulling materials even though the weight of the materials is negligible." Doc. 20, p. 15. And it is possible that the job of "escort vehicle driver" could have been classified as light work. But the DOT classifies this job as *sedentary* work. AR 163. And the vocational expert testified that this job is sedentary work and that a hypothetical person with Niedt's RFC could perform this job. AR 163. Therefore, the ALJ's conclusion that Niedt can perform this job is supported by substantial evidence.

Niedt does not present any arguments against the ALJ's use of the addressor job. Accordingly, the ALJ has proposed two jobs, "escort vehicle driver" and "addressor," that a person with Niedt's RFC and her relevant characteristics can perform. The vocational expert testified that there are over 39,000 of these jobs. AR 35. The ALJ's conclusion that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" considering her "age, education, work experience, and residual functional capacity" is supported by substantial evidence. AR 34-35.

In her fifth allegation of error, Niedt argues that the ALJ "legally erred by disregarding the evidence of Ms. Niedt's very frequent medical appointments and the vocational expert's testimony regarding their vocational impact." Doc. 20, p. 16. Niedt testified that she has at least one medical appointment per week and sometimes several. Doc. 20, pp. 16-17. She asserts that "[w]hen presented with this testimony, the vocational expert agreed that Ms. Niedt's absences would be intolerable to a typical employer." Doc. 20, p. 17 (citing AR 141). Accordingly, she argues, the ALJ erred and her decision must be reversed.

Niedt, however, provides no evidence that these visits could not have been scheduled at times when she was not working. She provides no evidence that each visit would have taken

an entire day and they could not be grouped together. She does not support her argument with a medical opinion stating that she would need this level of medical treatment for the foreseeable future. While it is possible that Niedt's level of treatment would adversely affect her RFC, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017); *see, e.g., Abrahams v. Kijakazi*, 2023 WL 4491744, at *1 (9th Cir. July 12, 2023) (unpublished) ("Abrahams fails to point to any evidence of a lack of availability of non-traditional work shifts, such as late shifts, that would have allowed him to attend daytime medical appointments on weekdays, or any evidence that his doctors did not offer evening or weekend appointments. The ALJ had no duty to help Abrahams develop such evidence."); *Goodman v. Berryhill*, 2017 WL 4265685, at *3 (W.D. Wash. Sept. 25, 2017) ("The ALJ did not harmfully err by declining to find that the frequency of medical treatment during the closed period precluded his consistent attendance at work for longer than 12 months."); *Stone v. Berryhill*, 2018 WL 5300381, at *19 (C.D. Ill. Oct. 24, 2018) ("If Stone had been working, she might have scheduled her medical appointments on her days off or combined appointments. No one knows. No one knows because this argument is all speculation. The ALJ did not err in omitting such speculation from her decision. If numbers of doctors' visits alone could establish disability, claimants would only need to schedule enough visits."); *but see, e.g., Bourcier v. Saul*, 856 F. App'x 687, 691 (9th Cir. 2021) (unpublished) ("Claimant has presented evidence sufficient to establish the possibility that the frequency of her medical appointments may inhibit her ability to work on a 'regular and continuing basis.' We remand for further consideration and development of the record on this issue."); *Jones v. Kijakazi*, 2022 WL 595729, at *4 (D. Mont. Feb. 28, 2022) ("The ALJ should have considered whether Jones was able to schedule her medical treatment outside of work hours or otherwise group her medical appointments in a way that would minimize her time away from work.").

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, affirm the final decision of the Commissioner.

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 14 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. The Local Rules permit the filing of a response to an objection. They do not permit the filing of a reply to a response without leave of the District Court.

DATED this 18th day of July, 2024.

Honorable Michael A. Ambri
United States Magistrate Judge

- 16 -